UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RIDE THE DUCKS SEATTLE LLC,<br><br>                    Plaintiff,<br><br>      v.<br><br>RIDE THE DUCKS INTERNATIONAL LLC,, et al.,<br><br>                    Defendants.<br>_____<br>RIDE THE DUCKS INTERNATIONAL LLC,<br><br>                    Cross-Plaintiff,<br><br>      v.<br><br>BRIAN TRACEY, et al.,<br><br>                    Defendants. | CASE NO. C19-1408 MJP<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

1   The above-entitled Court, having received and reviewed:

2   1.  Plaintiff's Motion for Summary Judgment (Dkt. No. 21), Defendant's Response and
3       Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 23), Plaintiff's
4       Reply in Support of Motion for Summary Judgment (Dkt. No. 27);
5   2.  Defendant's Motion for Summary Judgment (Dkt. No. 25), Plaintiff's Opposition to
6       Defendant's Motion for Summary Judgment (Dkt. No. 28), Defendant's Reply in
7       Support of Motion for Summary Judgment (Dkt. No. 29);

all attached declarations and exhibits; and relevant portions of the record, rules as follows:

IT IS ORDERED that Plaintiff's motion (which the Court reads as a request to dismiss Defendant's claim but not Plaintiff's) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion (which the Court reads as a request to dismiss the claims of both sides) is GRANTED, and this matter is DISMISSED in its entirety with prejudice.

**Background[1]**

The inciting incident for the series of lawsuits in which these two parties have been involved (culminating in these suits against each other) is the September 24, 2015 collision between an amphibious tourist vehicle (the "Duck") owned and operated by Plaintiff Ride the Ducks Seattle ("SEATTLE") and a tour bus. The accident triggered scores of civil lawsuits involving licensee/purchaser SEATTLE and its manufacturer/licensor, Defendant Ride the Ducks International ("INTERNATIONAL"); all but two were settled prior to verdict.

---

[1] The two corporate parties to this litigation are Ride the Duck Seattle, LLC (Plaintiff) and Ride the Duck International, LLC (Defendant/Cross-Plaintiff). Rather than employ their confusingly similar acronyms (RTDS and RTDI), this order will refer to them as SEATTLE and INTERNATIONAL.

1  The relationship between the two entities began in 1997 when SEATTLE leased an
2  amphibious transport vehicle called a "Duck" from Ozark Scenic Tours ("Ozark"), a
3  manufacturer and tour operator later acquired by INTERNATIONAL as a wholly-owned
4  subsidiary.  In 2003, SEATTLE and Ozark entered into an agreement to acquire additional
5  vehicles ("the 2003 Agreement; also referenced elsewhere as "the Master Agreement"), an
6  agreement that was in effect at the time of the September 2015 accident.  Relevant to the claims
7  in this lawsuit, the 2003 Agreement contained an indemnification section in which "Buyer"
8  (SEATTLE) agreed to indemnify and hold harmless "Seller [INTERNATIONAL] and its
9  officers, directors, shareholders, members, agents, employees and affiliates," and further stated:

> Nothing in this Section 4.60 shall be construed to protect, defend,
> indemnify, or hold Seller, and its officers, directors, shareholders,
> members, agents, employees and affiliates harmless from any and all
> claims, demands, actions, or causes of action brought by any person or
> entity, which arise out of Seller's modifications to the DUCKS sold by
> Seller to Buyer, or Seller's provision of replacement parts to Buyer, which
> are manufactured by or only available from Seller pursuant to this
> Agreement…

Dkt. No. 26, Decl. of Hermsen, Ex. 1, Ex. A at 20-21.

At the heart of the dispute between the parties is a 2013 "Service Bulletin" issued by INTERNATIONAL that recommended a modification to an axle housing which had been failing on vehicles like SEATTLE's Duck 6.  Id., Ex. 4.  Despite acknowledging receipt of the Service Bulletin, SEATTLE did not make the modification prior to the failure of the front axle on Duck 6 which resulted in the September 2015 accident.

Following the onset of extensive civil litigation against INTERNATIONAL and SEATTLE, and in order to secure the settlements in many of the lawsuits, beginning in August

2017 SEATTLE and INTERNATIONAL entered into a further series of agreements, the scope and effect of which is the subject of this litigation.

On August 21, 2017, the parties executed a "Termination Agreement."  Dkt. No. 22-28. The document terminated the "Master Agreement" (2003 Agreement) and "any and all other agreements or contracts by and/or between [SEATTLE] and [INTERNATIONAL] or any predecessors of [INTERNATIONAL]," except for a provision which stipulated that "only Section 4.60 of the 2003 licensing agreement would survive, regarding indemnification, and only regarding possible indemnification claims relating to the September 24, 2015 accident."  Id. at §§ 1, 11(a).  Section 11(b) of the Termination Agreement provided that

> [INTERNATIONAL] shall indemnify, defend and hold [SEATTLE], its managers, members and agents harmless from and against all losses, damages and expenses…. arising out [of] or in relation to (i) any claim, demand or cause of action by… any party claiming by or through [INTERNATIONAL]… with respect to any liability or obligation under the Terminated Agreements…

Id. at § 11(b).  There was an identical § 11(c) reflecting SEATTLE's agreement to similarly indemnify and hold INTERNATIONAL harmless.  Id. at § 11(c).

The second document, entitled the Ride the Ducks Coverage Term Sheet: Insurance Available for Indemnity & Defense Obligations ("the Term Sheet") was executed on April 3, 2018 by SEATTLE, INTERNATIONAL, and T.H.E. Insurance Company ("T.H.E.").  Id., Decl. of Hermsen, Ex. 1 at 31-32.  Among its terms was an agreement that:

> [INTERNATIONAL] and [SEATTLE] shall each dismiss with prejudice their indemnity claims against each other… This release does not include contribution claims between [INTERNATIONAL] and [SEATTLE], but those claims are subject to the limitations set forth in paragraph 12 [*wherein T.H.E. agreed not to require INTERNATIONAL to pursue contribution claims against SEATTLE or assign any contribution claim it might have against SEATTLE*].

Id. at 32 (¶ 11).

On April 24, 2018, the parties executed their third agreement: a Mutual Waiver and Release of Claims of Indemnification ("the Waiver Agreement") which referenced the provisions of the 2003 Agreement and the Term Sheet as well. The relevant portions of that agreement are as follows:

> 3. <u>2003 Agreement.</u>  RTD SEATTLE and RTD INTERNATIONAL's predecessor-in-interest, Ozark Scenic Tours, LLC, were parties to a January 1, 2003 agreement.  A copy of the agreement is attached as Exhibit A.  Under section 4.60 of the 2003 agreement, the Parties have the right to be protected, defended, indemnified, and held harmless from claims, demands, actions, or and causes of action according to that provision's terms.
>
> 4. <u>Claims for Defense and Indemnification.</u>  Relying on Section 4.60 of the 2003 agreement, each Party has claimed it is entitled to be defended, indemnified, and held harmless by the other against the claims arising out of the September 24, 2015 accident involving Duck
>
> TERMS AND CONDITIONS
>
> 5. <u>Mutual Waiver and Release.</u>  RTD INTERNATIONAL and RTD SEATTLE hereby waive and release all rights and claims against each other to be protected, defended, indemnified, and held harmless from any and all claims, demands, actions, or causes of action arising from or relating in any way to the accident on September 24, 2015, involving Duck 6.  This waiver and release expressly includes all rights and claims the Parties may have against each other under the 2003 agreement, including Section 4.60.
>
> 6. <u>Contribution.</u>  The foregoing mutual waiver and release shall not apply to any rights of contribution…

Id. at 2-3. In other words, the exception carved out for § 4.60 in the August 2017 Termination Agreement was eliminated, while any rights to contribution were preserved.

Each side has filed a single claim against the other – a violation of the Washington Consumer Protection Act. RCW 19.86.010 *et seq.* Dkt. No. 1-3, Complaint; Dkt. No. 11, Answer and Counterclaim. Both parties have filed a motion for summary judgment – SEATTLE seeks to preserve its claim while dismissing INTERNATIONAL's; INTERNATIONAL contends that the agreements between the two parties foreclose either side from suing the other.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

**Discussion**

The Court arrives at its finding that the parties' claims against each other should not be permitted to go forward on two bases: a legal analysis of their final agreement and an analysis of the parameters of the Washington Consumer Protection Act.

The Waiver Agreement

The Court considers the parties' final agreement, their Mutual Waiver and Release of Claims of Indemnification ("the Waiver Agreement") to be the operative document governing their obligations (or lack thereof) to each other. The language in that document which controls their right to be free from further litigation is found in Paragraph 5 of that agreement:

> RTD INTERNATIONAL and RTD SEATTLE hereby waive and release all rights and claims against each other to be protected, defended, indemnified, and held harmless from any and all claims, demands, actions, or causes of action arising from or relating in any way to the accident on September 24, 2015, involving Duck 6.

The Court finds particularly meaningful the portion of this language which waives and releases either party's right to be <u>indemnified</u> from "any and all claims, demands, actions, or causes of action arising from or relating in any way to the accident on September 24, 2015." Both commonly-held legal definition and Washington and Ninth Circuit case law compel the finding that the intent of this language is to release the parties from any and all claims against each other related to the September 2015 catastrophe.

Black's Law Dictionary defines "indemnify" as "[t]o reimburse (another) for a loss suffered because of a third party's or <u>one's own act or default</u>," and the definition of "indemnity" includes "1. A duty to make good <u>any</u> loss, damage, or liability incurred by another. 2. The right of an injured party to claim reimbursement for its loss, damage, or liability <u>from a person who has such a duty</u>." BLACK'S LAW DICTIONARY (11th ed. 2019)(emphasis supplied). The claims by these parties, wherein each is asking the other to make good on the damage each has suffered as a result of the September 2015 accident, fall well within the boundaries of these definitions. This attempt to recover damages from each other is incompatible with the waiver of

a right to be indemnified from any and all claims arising out of the unfortunate tragedy in which both parties had a role.

And there is Washington case law upholding the principle that indemnification applies to first-party actions as well as third-party lawsuits. Erickson Paving Co. v. Yardley Drilling Co., 7 Wn.App. 681 (1972), concerned an agreement between a contractor and subcontractor wherein the subcontractor agreed to "indemnify and save harmless the contractor from and against any and all…. losses." Id. at 684. The Washington Court of Appeals, in upholding the lower court's finding that "this is an absolute agreement absolutely to pay for any damage that was the result of the work of the subcontractor," commented that "a reading of the indemnity provision for its plain meaning discloses no language limiting its application to third-party claims, nor does our research indicate that such a provision should be so limited." Id. at 685. The case and its holding has never been overturned or disavowed.

The Ninth Circuit is in accord. In overturning a lower court decision construing the term "indemnify" to be limited to third-party actions, the appellate court held that

> the district court was wrong to assume that the word "indemnify" necessarily carries with it the baggage of the clauses in which it most frequently appears. The word itself refers to compensation for loss in general, not just particular types of loss.

Atari Corp. v. Ernst & Whinney, 981 F.2d 1025, 1031 (9th Cir. 1992). The Court went on to cite the Black's Law Dictionary definition of "indemnify" referenced *supra* and comment that "[t]he plain unambiguous meaning of 'indemnify' is not 'to compensate for losses caused by third parties,' but merely to compensate." Id. at 1032. The Ninth Circuit also noted that, if the parties had intended to limit the term to actions brought by third parties, they could have so stated, rather than using the broadly inclusive "all acts and omissions" language. Id.

1    The Court finds no reason to differentiate the language at issue in this action from the
2 contract terms which have been held, both by the law of Washington (which governs the Waiver
3 Agreement; *see* ¶ 8) and the Ninth Circuit, to have equal applicability to first- and third-party
4 claims.  The effect of the waiver of the right to be indemnified "from any and all claims,
5 demands, actions, or causes of action" related to the September 2015 accident is to preclude
6 these two parties from seeking recompense from each other related to that unfortunate incident
7 under any cause of action.

8 The Washington Consumer Protection Act

9    The Court finds further that, even were the language of the Waiver Agreement somehow
10 found to permit the possibility of cross-claims such as this litigation presents, these parties would
11 still not be entitled to bring suit under the Consumer Protection Act ("CPA").  While the CPA is
12 undoubtedly a broad-ranging statutory scheme, it is not intended to cover every conceivable
13 business transaction; there are business relationships which by their nature are exempted from
14 qualification for CPA liability, and the SEATTLE-INTERNATIONAL relationship is one of
15 them.

16    The seminal case in this regard is Behnke v. Ahrens, 172 Wn.App. 281 (2012), which
17 framed the issue as follows:

> In applying the requirement that the allegedly deceptive act has the capacity to deceive "a substantial portion of the public," the concern of Washington courts has been to rule out those deceptive acts and practices that are unique to the relationship between plaintiff and defendant. *Burns v. McClinton*, 135 Wn. App. 285, 303-06, 143 P.3d 630 (2006), *review denied*, 161 Wn.2d 1005 (2007); *Brown v. Brown*, 157 Wn. App. 803, 815-17, 239 P.3d 602 (2010). The definition of "unfair" and "deceptive" must be objective to prevent every consumer complaint from becoming a triable violation of the act. Thus, our Supreme Court has said that actionable deception exists where there is a practice likely to mislead a "reasonable" or "ordinary" consumer. [*citation omitted*]

> \* \* \*
>
> As for determining whether the complained of conduct affects the public interest, this element also is factual in nature. *Hangman Ridge*, 105 Wn.2d at 791. Where the transaction was essentially a private dispute rather than essentially a consumer transaction, it may be more difficult to show that the public has an interest in the subject matter. *Hangman Ridge*, 105 Wn.2d at 790. Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest.

Id. at 292-93.

The circumstances surrounding the dispute between these parties fit squarely within the proscription mapped out in Behnke. While the controversy at the heart of this litigation ultimately affected a significant portion of the public (i.e., the victims of the September 2015 accident and their family and friends), that is not the focus of the inquiry into the "public interest impact" which the CPA requires. The statute is aimed at curtailing unfair and/or deceptive practices which are likely, through unchecked repetition, to have a recurring negative effect on "a substantial portion of the public," that portion of the public engaged in the same or similar transactions. To that end, a private contract between parties in a highly specialized industry does not involve practices which are "likely to mislead a 'reasonable' or 'ordinary' consumer;" this is not a consumer transaction in which the public has an interest intended to fall under CPA protection.

**Conclusion**

The Waiver Agreement executed by the parties, in waiving the right to be indemnified under all circumstances relative to the underlying event in which both had previously been found to bear some responsibility, insulates both sides from all further claims arising out of the September 2015 accident. Even if that were found not to be the case, it is the further finding of

this Court that, as a matter of law, the controversy between the parties in this lawsuit is not one for which the CPA was intended as a remedy.

Plaintiff's motion for summary judgment (to the extent that it maintains that Plaintiff's CPA claim should be permitted to go forward) is DENIED.  Defendant's motion (to the extent that it contends that neither side should be permitted to go forward with its CPA claim) is GRANTED.  This matter is DISMISSED in its entirety, with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 3, 2020.

Marsha J. Pechman
United States Senior District Judge