UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RIDE THE DUCKS SEATTLE LLC,<br><br>Plaintiff,<br><br>v.<br><br>RIDE THE DUCKS INTERNATIONAL LLC, CHRIS HERSCHEND, JANE DOE HERSCHEND, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, BRIAN TRACEY, and JANE DOE TRACEY,<br><br>Defendants. | CASE NO. C19-1408 MJP<br><br>ORDER GRANTING DEFENDATS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment. (Dkt. No. 82.) Having reviewed the Motion, Plaintiff's Opposition (Dkt. No. 84), the Reply (Dkt. No. 90), and all supporting materials, and having held oral argument on December 21, 2022, the Court GRANTS the Motion.

# BACKGROUND

Founded in 1997, Plaintiff Ride the Ducks Seattle ("Seattle") has operated tours using amphibious vehicles known as "duck" boats. In 2003, it entered into a licensing agreement with Defendant Ride the Ducks International LLC ("International") through which Seattle agreed to buy additional duck boats. (Ex. 4 to the Declaration of Rodney Umberger (Dkt. No. 83).) In 2005, as part of that relationship, Seattle purchased a stretch duck boat, referred to as Duck 6, that suffered an axle housing fracture that caused a fatal collision in September 2015. (Ex. 1 to the Declaration of Patricia K. Buchanan at 2135 (Dkt. No. 85).) In personal injury lawsuits commenced after the collision, both Seattle and International were found liable. Seattle was found forty percent at fault, while International was found to be sixty percent at fault. West v. RTDI, LLC, 18 Wn. App. 2d 1013, 2021 WL 2809609 at *1 (Div. 1 2021) (unpublished).

In 2019, Seattle filed this lawsuit, through which it pursues claims under the Washington Consumer Protection Act against Defendants International, Chris Herschend, and Herschend Family Entertainment Corporation (together "Defendants"). Seattle alleges that Defendants failed to disclose an axle housing defect at the time Seattle bought Duck 6 and failed to remedy the known defect before the 2015 collision. According to Seattle, these constitute unfair and deceptive acts that are actionable CPA violations. Seattle also argues that Defendants' conduct violated the Auto Dealer Practices Act (RCW 46.70), and are per se violations of the CPA. Defendants move for summary judgment on the CPA claims, arguing that Seattle cannot meet its burden under the CPA to show that these alleged failures constitute unfair or deceptive acts that affect the public interest or are per se violations. Defendants also argue that there is a lack of evidence of causation.

To contextualize Defendants' motion, the Court reviews the details about the purchase of Duck 6 and the history leading up to the 2015 collision, and then examines the procedural history of this case.

**A.      Factual Background**

Seattle asserts that Defendants failed to disclose known defects related to the axle housing of stretch duck boats before Seattle purchased Duck 6 in 2005. Seattle points out that in 2003 and 2004, International had identified three different stretch ducks boats that experienced axle housing fractures. (Buchanan Decl. Ex. 5 at 1-2 (Dkt. No. 85-1 at 38-39).) "As a result of its inspections and examinations, [International] developed an axle housing repair to be implemented on all [International] stretch ducks refurbished by the company from Fall 2004 forward." (Id. at 2 (Dkt. No. 85-1 at 39).) This "repair" entailed installing a metal "tab" that was a sort of early-warning system to warn the operator that the axle housing was likely to fail. (Buchanan Decl. Ex. 6 at 2 (Dkt. No. 85-1 at 44); Buchanan Decl. Ex. 8 at 2 (Dkt. No. 85-1 at 72).) International refurbished Duck 6 and included the tab "repair." (Buchanan Decl. Ex. 5 at 2 (Dkt. No. 85-1 at 39).) But prior to the sale of Duck 6, International did not disclose to Seattle the purpose of the "tab" system or that it should be inspected. (Buchanan Decl. Ex. 6 at 3 (Dkt. No. 85-1 at 45).)

Seattle also asserts that before the 2015 collision involving Duck 6, Defendants did not remedy the known axle housing defect despite the axle failures of two different stretch duck boats that occurred in 2013. The first stretch duck incident occurred in July 2013, when a stretch duck suffered an axle failure in Missouri. (Buchanan Decl. Ex. 9 at 1-3 (Dkt. No. 85-1 at 76-78).) The second axle failure was discovered by Defendants in August 2013, when they were inspecting a different stretch duck in Missouri. (Buchanan Decl. Ex. 5 at 3 (Dkt. No. 85-1 at

40).) In response to these two discoveries, International developed a modification to replace the tab and issued a Service Bulletin that recommended front axle housing repair on all fifty-seven stretch duck boats, including Duck 6. (Buchanan Decl. Ex. 5 at 4 (Dkt. No. 85-1 at 41).) But according to Seattle, Defendants did not disclose the incidents leading to the Service Bulletin or the reason for proposed repairs. (Buchanan Decl. Ex. 7 at 4974, 4991-92, 5134-35 (Dkt. No. 85-1 at 56, 58-59, 67-68); id. Ex. 12 at 4061 (Dkt. No. 85-1 at 93).) And International did not inform the National Highway Traffic Safety Administration that it knew of the axle housing defect prior to the 2015 Duck 6 collision. (Buchanan Decl. Ex. 4 at ¶ 25 (Dkt. No. 85-1 at 19-20); id. Ex. 7 at 4974, 4991-92, 5134-35 (Dkt. No. 85-1 at 56, 58-59, 67-68).)

The Parties dispute whether the Service Bulletin put Seattle on notice of the need to fix the axle-housing defect before the 2015 collision. The Service Bulletin told licensees, such as Seattle, to perform the repair "[a]s soon as practical and prior to operating 2014." (Buchanan Decl. Ex. 5 at 4 (Dkt. No. 85-1 at 41).) And it informed licensees that they should perform daily visual inspections of the front wheels and remove any vehicle from service whose front wheels appeared vertically canted. (Id.) Seattle purportedly performed inspections and found no canted wheels on its stretch duck boats, including on Duck 6. (Buchanan Decl. Ex. 12 at 4097-98 (Dkt. No. 85-1 at 95-96).) The parties also dispute whether Seattle declined International's offer to help implement the repair or whether International failed to respond to Seattle's request for help. (Compare Umberger Decl. Ex. 10 at 5031 (Dkt. No. 83 at 106) with Buchanan Decl. Ex. 20 at 60-61 (Dkt. No. 134-35).)

**B.      Procedural History**

The Court previously granted summary judgment in Defendants' favor on cross-motions for summary judgment. (Dkt. No. 64.) The Court concluded that a 2018 agreement between the

1 | Parties included a waiver of the CPA claims that Seattle pursued in this litigation. The Court also
2 | found the CPA could not be pursued due to a lack of evidence that the conduct at issue had the
3 | capacity to impact a substantial portion of the public. (Id. at 10.) The Parties then appealed. The
4 | Ninth Circuit reversed the Court's decision as to the waiver provision. (Dkt. No. 75.) And
5 | although the Ninth Circuit expressed no specific disagreement with the Court's analysis of the
6 | CPA claim, it concluded that the Court should have given the parties more opportunity to brief
7 | the merits of the claim and reversed the determination on the CPA and remanded for further
8 | proceedings. (Id. at 4-5.) The Court also discussed Defendants' cross claims against Brian
9 | Tracey, the CEO of Seattle, which had been dismissed as part of the Court's Order on the cross-
10 | motions for summary judgment on the waiver theory. The Ninth Circuit noted that because
11 | International failed to appeal that part of the decision, it lacked jurisdiction to review
12 | International's claim against Tracey. (Id. at 5-6.) The parties now dispute whether the Ninth
13 | Circuit's decision revitalized International's claims against Tracey. International contends in a
14 | footnote that its claims are actionable because the basis for the Court's dismissal has been
15 | reversed. (Mot. for SJ at 1 n.1.) But Seattle argues that International's claims remain dismissed
16 | because International failed to properly appeal the dismissal.

## ANALYSIS

### A.     Legal Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

1  Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is

2  sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The

3  moving party bears the initial burden of showing that there is no evidence which supports an

4  element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

5  Once the movant has met this burden, the nonmoving party then must show that there is a

6  genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the

7  existence of a genuine issue of material fact, "the moving party is entitled to judgment as a

8  matter of law." Celotex, 477 U.S. at 323-24.

**B.     CPA Claim May Not Proceed**

"To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37 (2009) (citing Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784 (1986)). "The CPA is to be 'liberally construed that its beneficial purposes may be served.'" Panag, 166 Wn.2d at 37 (quoting RCW 19.86.920.)

Defendants challenge the first, third, and fifth elements of Seattle's CPA claim. The Court reviews whether: (1) Seattle has alleged an "unfair or deceptive act," (2) whether Seattle has identified an act that affects the public interest, (3) whether Seattle has alleged a per se violation of the CPA satisfying the first and third elements, and (4) causation.

**1.     Unfair and Deceptive Acts**

Defendants argue that the conduct at issue is not actionable under the CPA because it does not have the necessary capacity to deceive a substantial portion of the public or an ordinary consumer. The Court agrees. The Court first reviews the standards applicable to determining

whether conduct is actionable, unfair or deceptive conduct and then analyzes whether the conduct here meets the test.

### a. Legal standard

The CPA requires evidence of a deceptive or unfair act. If deception is alleged, the plaintiff "need not show that the act in question was intended to deceive, but that the alleged act had the capacity to deceive a substantial portion of the public.'" Hangman Ridge, 105 Wn.2d at 785; see Panag, 166 Wn.2d at 47. "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." Panag, 166 Wn.2d at 50 (quoting Sw. Sunsites, Inc. v. Fed. Trade Comm'n, 785 F.2d 1431, 1435 (9th Cir. 1986)). But "the plaintiff does not have to be a consumer" to have a claim under the CPA. Panag, 166 Wn.2d at 41. Instead, "[i]n applying the requirement that the allegedly deceptive act has the capacity to deceive 'a substantial portion of the public,' the concern of Washington courts has been to rule out those deceptive acts and practices that are unique to the relationship between plaintiff and defendant." Behnke v. Ahrens, 172 Wn. App. 281, 292–93 (2012) (quoting Burns v. McClinton, 135 Wn. App. 285, 303–06 (2006), review denied, 161 Wn.2d 1005 (2007)). And "the definition of 'unfair' and 'deceptive' must be objective to prevent every consumer complaint from becoming a triable violation of the act." Id.

A practice may be unfair if it "'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits.'" Klem v. Washington Mut. Bank, 176 Wn.2d 771, 787 (2013) (quoting 15 U.S.C. § 45(n)). "[B]ecause the act does not define 'unfair' or 'deceptive,' this court has allowed the definitions to evolve through a 'gradual process of judicial inclusion and exclusion.'" Saunders v. Lloyd's of London, 113 Wn.2d 330, 344 (1989) (quoting State v.

Reader's Digest Ass'n, 81 Wn.2d 259, 275 (1972), modified in Hangman Ridge, 105 Wn.2d at 786)).

The Parties dispute whether the "capacity to deceive" presents a factual or legal question. The Ninth Circuit's Memorandum cited Washington law stating that "whether [an act] had the capacity to deceive a substantial portion of the public' is a 'question of law.'" Ninth Cir. Mem. at 4 (quoting State v. LA Inv'rs, LLC, 2 Wn. App. 2d 524, 539 (2018)). But this does not quite track the Washington Pattern Jury Instructions, which point out that this is only a question of law if the facts about the act at issue are undisputed:

> When the underlying facts are undisputed, the question whether the acts are likely to deceive—an objective inquiry—is a question of law. State v. Mandatory Poster Agency, Inc., 199 Wn. App. 506, 512, 398 P.3d 1271 (2017). However, whether such a deception has the capacity to reach a substantial portion of the public is a question of fact precluding summary judgment, unless the undisputed facts establish that capacity. Mandatory Poster Agency, 199 Wn. App. at 512.

WPIC 310.01 (Comment). Other Washington courts have concluded that "[w]hether a deceptive act has the capacity to deceive a substantial portion of the public is a question of fact." Behnke, 172 Wn. App. at 292. Having considered the case law, the Court concludes that whether conduct has the "capacity to deceive" is a question of law but only if the underlying facts relevant to that question are undisputed.

    b.   **Unfair and Deceptive Acts Not Actionable**

The Court finds that although Seattle has identified unfair and deceptive acts and omissions, they are not actionable under the CPA because they do not have the capacity to deceive a substantial portion of the public.

The Court first notes that Seattle has pointed to sufficient evidence suggesting that Defendants knew of a defect with the axle housing before it sold Duck 6 to Seattle in 2005. There is also evidence that Defendants did not disclose the nature of the defect or the reasons for

1  the "tab" that they had welded on the boat. The failure to disclose a known defect in a vehicle

2  being sold to a new owner is deceptive and unfair conduct. Construing the facts in the light most

3  favorable to Seattle, the Court finds that there is evidence of deceptive and unfair conduct.

4  But the Court remains unsatisfied that Defendants' failure to disclose and remedy the

5  defect had capacity to deceive a substantial portion of the public. See Behnke, 172 Wn. App. at

6  292 (noting that while there is no numeric threshold, the acts or omissions must have the

7  capacity to deceive a substantial portion of the public). The purchase of Duck 6 was part of a

8  private and ongoing licensee-licensor relationship. International did not offer the stretch duck

9  vehicles to the public at large. Rather, they were only available for sale to its licensees. This

10 impacts the Court's analysis because it shows that the transaction here was part of a limited

11 business relationship between Seattle and International that was unique within this State. While

12 there were other sales of stretch duck vehicles, none occurred in Washington, and these were all

13 sales to other licensees of International. And the failure to remedy the axle-housing defect was

14 part of the ongoing and existing licensee/licensor relationship that is private in nature and limited

15 in scope to Seattle, not other consumers in Washington. The facts here align with those in

16 Behnke, where the issue presented was whether an accountant's failure to disclose a conflict of

17 interest regarding advice on a tax opinion constituted an unfair or deceptive act. See Behnke, 172

18 Wn. App. at 295-96. The court there noted that the act was part of a private arrangement and,

19 even though the accountant represented other clients with respect to the "controversial tax

20 strategy," there was no evidence that the deceptive act was "repeated with these other clients or

21 was likely to be repeated with other future clients." Id. at 296. Here, the sale of Duck 6 was part

22 of a private licensee/licensor arrangement and there were no other stretch duck boats sold in

23 Washington except to Seattle. Moreover, the record lacks evidence of who the other purchasers

24

of stretch duck boats were and how many such entities exist. As in Behnke, the Court finds that there is inadequate evidence that the unfair and deceptive acts were repeated or likely to be repeated in any meaningful way beyond the limited universe of Defendants' licensees.

The facts here are also unlike those found actionable under the CPA where the affected consuming public is limited. The Washington Supreme Court has found a capacity to deceive a substantial portion of the public satisfied where the facts concerned the deceptive sale of expensive race horses to a relatively small and wealthy cohort of buyers. See Travis v. Wash. Horse Breeders Ass'n, 111 Wn.2d 396, 406 (1988). But here, the record lacks any evidence of other buyers of stretch duck boats in Washington or elsewhere, and how the purported deception might reach anyone other than the limited group of Defendants' licensees. Nor is there evidence of the capacity for repetition.

So while Seattle has identified unfair and deceptive acts and omissions, it has failed to provide sufficient evidence that these acts or omissions have the capacity to deceive a substantial portion of the public. The acts and omissions are therefore not actionable under the CPA. On this basis the Court GRANTS the Motion for Summary Judgment on the CPA claims.

**2.      Public Interest**

Though the Court need not reach this issue, the Court agrees with Defendants that there is insufficient evidence that the deceptive and unfair acts affect the public interest.

The CPA requires a showing that the act at issue impacts the public interest. Hangman Ridge, 105 Wn.2d at 789-90. "[W]hether the public has an interest in any given action is to be determined by the trier of fact from several factors, depending upon the context in which the alleged acts were committed." Id. Washington courts recognize two different contexts: (1) consumer transactions, and (2) private disputes. Id. "The factors in both the 'consumer' and

'private dispute' contexts represent indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact." Id. at 791.

"Where the transaction was essentially a consumer transaction, these factors are relevant to establish public interest: (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?" Hangman Ridge, 105 Wn.2d at 790 (internal citation omitted).

But where the transaction is "essentially a private dispute" the "[f]actors indicating public interest in this context include: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" Hangman Ridge, 105 Wn.2d at 790-91. These elements reflect the fact that "[o]rdinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." Id. at 790.

Here, the Court finds that the transaction at issue is private in nature. There is no evidence that these highly specialized stretch duck vehicles are open to the consuming public. The purchase here was part of an existing and ongoing licensee/licensor relationship. As such, the Court assesses Defendants' conduct under the private dispute test.

Applying the private dispute test, there is insufficient evidence to support a finding of public interest in Seattle's favor. First, the acts were allegedly committed in the course of Defendants' business. This favors Seattle. Second, there is no evidence of how Defendants

advertised the sale of the stretch duck boats. The only evidence cited is a "teammate handbook" that describes the locations where duck vehicles operate. This factor favors Defendants. Third, it is not clear who solicited the sale of Duck 6. Seattle identifies Tom Ismon as having solicited Defendants to buy the Duck vehicles, but it is unclear Ismon's role with Seattle. (Dkt. No. 85-1 at 159.) And there is no evidence about solicitation. This factor favors Defendants. Fourth, there is mixed evidence about the bargaining power of the parties. Seattle maintains that it was an unsophisticated purchaser, but there is evidence that Seattle had its own maintenance crew and was inspecting its vehicles, including Duck 6. This factor is neutral. On balance, the Court finds that Seattle has not met its burden to show that a jury could find the "public interest" element satisfied. This is an independent basis on which the Court GRANTS the Motion.

### 3. Per Se CPA Violation

The Court also finds that Seattle has failed to identify potential per se violations of the CPA to satisfy both the first and third elements of their CPA claim. While Seattle has identified two potential per se violations, neither would satisfy the first element of the claim.

"A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." Hangman Ridge, 105 Wn.2d at 786. And "the public interest element may be satisfied per se" where "a statute has been violated which contains a specific legislative declaration of public interest impact." Id. at 791. As an example of such a declaration, the Supreme Court identified a statutory provision stating "[t]he legislature . . . declares that the distribution and sale of vehicles . . . vitally affects . . . the public interest. . . ." Id. (citing RCW 46.70.005). This quoted language comes from the Auto Dealer Practices Act ("ADPA"), which is the Act on which Seattle premises its per se claims. ADPA states additionally that "[a]ny violation of this chapter is

deemed to affect the public interest and constitutes a violation of chapter 19.86 RCW." RCW 46.70.310. And the Ninth Circuit confirmed that a violation of ADPA "affects the public interest per se." Ninth Cir. Mem. at 4 (citing RCW 46.370.310).

Seattle has identified only two actionable ADPA violations that might constitute per se CPA violations causally linked to the claimed injury. Seattle argues that Defendants violated ADPA by: (1) failing to disclose the axle defect at the time of the sale; and (2) failing to remedy or recall the defective axle housing. Seattle also argues that Defendants violated ADPA by not being licensed in Washington.

While the Court agrees with Seattle that there are possible ADPA violations arising out of Defendants' failure to disclose the axle housing defect at the time of the sale, this would not constitute a per se unfair or deceptive acts or omissions. ADPA makes it illegal "[t]o cause or permit to be advertised, printed, displayed, published, distributed, broadcasted, televised, or disseminated in any manner whatsoever, any statement or representation with regard to the sale, lease, or financing of a vehicle which is false, deceptive, or misleading. . . ." RCW 46.70.180(1). Here, there is evidence that Defendants failed to disclose the defect when it sold Duck 6, which would adequately show a violation of ADPA. But this provision of ADPA does not specifically declare such an act or practice to constitute an unfair or deceptive act under the CPA. And no other provision of ADPA contains such a declaration that could apply. As such, the per se violation would only satisfy the "public interest" element, not the "unfair and deceptive" CPA element. See Hangman Ridge, 105 Wn.2d at 786. So even if Seattle prevailed on this claim, it would not satisfy its burden on the first CPA element. This is fatal to the claim.

Separately, Defendants argue that the axle defect is beyond the reach of this provision of ADPA, which they believes only applies to financing-related disclosures. Defendants premise

this argument on ejusdem generis—that an otherwise broad statute is limited by a list of specific covered acts. (Reply at 9 (citing City of Edmonds v. Bass, 16 Wn. App. 2d 488, 500 (2021)).) Defendants note that the section's illustrative examples are all limited to financing and that this necessarily limits the reach of the provision to financing-related disclosures, not material defects in the underlying vehicle. The Court is not convinced by the logic of this argument. By its title, the statutory provision defines "Unlawful acts and practices," not just those related to financing. And the list Defendants focus on is expressly identified as being non-exclusive. Moreover, the statutory language is exceedingly broad, such that it applies to "any statement or representation with regard to the sale . . . of a vehicle," and nowhere suggests it only considers financing-related representations. RCW 46.70.180(1). And in at least one unpublished decision, the Washington Court of Appeals for Division One considered statements concerning mileage to be actionable (though not sufficiently deceptive in the case before it). See Newkirk v. McMullen, 123 Wn. App. 1046, 2004 WL 2335354 (Div. 1 2004) (unpublished). Defendants, meanwhile, cite to no case law adopting their read of this section of ADPA. The Court rejects this argument.

Second, Seattle argues that Defendants failed to recall and remedy the axle in violation of a part of the ADPA regarding the "Denial, suspension or revocation of licenses—Grounds." RCW 46.70.101. This section states that the Director of the Motor Vehicles can deny, suspend, or revoke the license of a vehicle manufacturer "if the director finds that the order is in the public interest and that the applicant or licensee: . . . [e]ngaged in practices inimical to the health and safety of the citizens of the state of Washington including, but not limited to, failure to comply with standards set by the state of Washington or the federal government pertaining to the construction and safety of vehicles." RCW 46.70.101(2)(k). Seattle's invocation of this provision would appear problematic because the Director of Motor Vehicles must make a finding in order

for there to be a violation. But as Seattle points out, at least one decision from the Washington Court of Appeals held that a defendant could violate RCW 46.70 even if the director has taken no action. Franks v. Meyer, 5 Wn. App. 476, 481 (Div. III, 1971). Although Franks did not consider a CPA claim, its conclusion that a claim under ADPA could be brought even absent a finding of the director applies equally in the context of a CPA claim. Defendants offer no rebuttal to this point or any authority contradicting Franks. The Court adopts the reasoning in Franks and concludes that the conduct Seattle identifies can violate ADPA and constitute a per se CPA violation. But, as with Section .180, this section of ADPA fails to declare that a violation of this rule is a per se unfair or deceptive act. And no other provision of ADPA contains such a declaration that could apply. As such, proof of a violation of this section of ADPA cannot satisfy the first CPA elements. This is fatal to Seattle's claims.

Third, the Court finds that Seattle has not shown an actionable per se CPA violation arising out of Defendants' failure to be licensed in Washington. Even though it is undisputed Defendants lacked a vehicle manufacturer license, Seattle fails to show any causal connection between the alleged violation of ADPA and the injury. The Court finds that this cannot constitute a per se CPA violation given the absence of causation.

Separately, the Court rejects Defendants' argument that Seattle cannot premise any CPA claims on violations of ADPA because those claims would be stale. But as Seattle points out, the stale predicate doctrine allows Seattle to premise its CPA claims on ADPA violations that occurred outside of the statute of limitations for ADPA claims.

Ultimately, the Court finds that the per se CPA violations Seattle has identified are insufficient to satisfy the first CPA elements. So even if the Court assumes that Seattle could prove the first two ADPA violations and that they are per se violations, they would be

1  insufficient to prevail on the CPA claims given the absence of evidence to satisfy the first CPA
2  element.

3  **D.    Causation**

4  The Court finds a dispute of fact as to causation.

5  The CPA requires there to be a causal link between the unfair or deceptive act and the
6  injury suffered. See Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 13 Wn. App. 210,
7  227 (2006). Here, Seattle's theory of causation is highly attenuated. Under Seattle's theory, but-
8  for Defendants' failure to disclose the defect and to properly remedy it, the 2015 collision would
9  not have occurred and but-for the collision, Seattle's reputation and goodwill would not have
10 been damaged and it would not have lost the use of its other duck boats. Though the Court has
11 serious doubts as to whether a jury would agree with Seattle, the Court must construe the facts in
12 the light most favorable to Seattle, which leads the Court to conclude that there is a dispute of
13 fact precluding summary judgment on causation. But, given the Court's analysis above, the CPA
14 claims cannot proceed.

15 **C.    Defendant Tracey**

16 The Parties also dispute whether International's crossclaim against Brian Tracey has been
17 revived through the Ninth Circuit's decision. (Mot. at 1 n.1; Response at 8.) Seattle correctly
18 notes that the Ninth Circuit faulted International for failing to appeal the part of the Court's order
19 that dismissed the cross claims against Tracey. The Ninth Circuit found that it lacked jurisdiction
20 to consider International's claims against Tracey and "reversed in part, dismissed in part, and
21 remanded" the action. (Mem. Disp. at 5-6.) Because International failed to appeal the dismissal
22 of Tracey, it remains the law of the case that the cross claims against him are dismissed. That
23 holds true even though the Ninth Circuit reversed the underlying reason for the dismissal because
24 International failed to preserve that issue and the Ninth Circuit expressly found it lacked

jurisdiction to consider the claims. As such, the Court finds that International's claims against Tracey remain dismissed.

## CONCLUSION

The Court finds that Seattle has not identified conduct that has sufficient capacity to deceive a substantial portion of the public to be actionable under the CPA. The Court also finds an absence of evidence to support a finding that the conduct impacts the public interest. And even if Seattle could prove its ADPA-based per se CPA claims, they would not satisfy the first element of the CPA or lack evidence of causation. Seattle has failed to provide sufficient evidence to show that it can sustain its CPA claims on all five elements. The Court therefore GRANTS the Motion and enters summary judgment in Defendants' favor. The Court also confirms that the cross claims against Tracey remain dismissed.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 23, 2022.

Marsha J. Pechman
United States Senior District Judge