UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RIDE THE DUCKS SEATTLE LLC,<br><br>Plaintiff,<br><br>v.<br><br>RIDE THE DUCKS INTERNATIONAL LLC, CHRIS HERSCHEND, JANE DOE HERSCHEND, HERSCHEND FAMILY ENTERTAINMENT CORPORATION, BRIAN TRACEY, and JANE DOE TRACEY,<br><br>Defendants. | CASE NO. C19-1408 MJP<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Ride the Ducks Seattle, LLC's (Seattle) Motion for Summary Judgment on Defendant Ride the Ducks International's (International) counterclaim. (Dkt. No. 100.) Having reviewed the Motion, the Response (Dkt. No. 109), the Reply (Dkt. No. 111), and all supporting materials, the Court GRANTS the Motion and enters summary judgment in Seattle's favor on the counterclaim.

**BACKGROUND**

The Court's Order on Defendants' Motion for Summary Judgment details the underlying licensee-licensor relationship between the Parties and the facts concerning an amphibious "duck" boat that Seattle purchased from International that was involved in a fatal collision in 2015. (See Order Granting Defendants' motion for Summary Judgment (Dkt. No. 107).) The Court directs the reader to that Order and briefly reviews several facts relevant to the pending motion. Seattle has operated tours using amphibious vehicles known as "duck" boats since 1997. In 2003, it entered into a licensing agreement with International through which Seattle agreed to buy additional duck boats. (Ex. 4 to the Declaration of Rodney Umberger (Dkt. No. 83).) In 2005, as part of that relationship, Seattle purchased a stretch duck boat, referred to as Duck 6, that suffered an axle housing fracture that caused a fatal collision in September 2015. (Ex. 1 to the Declaration of Patricia K. Buchanan at 2135 (Dkt. No. 85).)

The present motion focuses on International's counterclaim brought under the Washington Consumer Protection Act against Seattle. The counterclaim alleges that Seattle engaged in misleading and unfair conduct by misrepresenting to International that its duck boats were safe and that it was implementing repairs consistent with a safety bulletin related to the axle housing that failed on Duck 6. (Counterclaim ¶¶ 33-35 (Dkt. No. 11).) International alleges that as a result of Seattle's misleading statements about the repairs, it suffered damage to its business stemming from the 2015 incident involving Duck 6.

**ANALYSIS**

**A.    Legal Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

**A.   CPA Counterclaim May Not Proceed**

"To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37 (2009) (citing Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784 (1986)). "The CPA is to be 'liberally construed that its beneficial purposes may be served.'" Panag, 166 Wn.2d at 37 (quoting RCW 19.86.920.)

Seattle challenges the first, third, fourth, and fifth elements of International's CPA counterclaim. The Court reviews whether: (1) International has alleged an "unfair or deceptive act," (2) International has identified an act that affects the public interest, (3) International has alleged a violation of the CPA premised on a public policy violation, (4) International has identified any cognizable damages, and (5) there is evidence of causation.

### 1. Unfair and Deceptive Acts

Seattle argue that the conduct at issue is not actionable under the CPA because it does not have the necessary capacity to deceive a substantial portion of the public or an ordinary consumer. The Court agrees. The Court first reviews the standards applicable to determining whether conduct is actionable, unfair or deceptive conduct and then analyzes whether the conduct here meets the test.

#### a. Legal standard

The CPA requires evidence of a deceptive or unfair act. If deception is alleged, the plaintiff "need not show that the act in question was intended to deceive, but that the alleged act had the capacity to deceive a substantial portion of the public.'" Hangman Ridge, 105 Wn.2d at 785; see Panag, 166 Wn.2d at 47. "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." Panag, 166 Wn.2d at 50 (quoting Sw. Sunsites, Inc. v. Fed. Trade Comm'n, 785 F.2d 1431, 1435 (9th Cir. 1986)). But "the plaintiff does not have to be a consumer" to have a claim under the CPA. Panag, 166 Wn.2d at 41. Instead, "[i]n applying the requirement that the allegedly deceptive act has the capacity to deceive 'a substantial portion of the public,' the concern of Washington courts has been to rule out those deceptive acts and practices that are unique to the relationship between plaintiff and defendant." Behnke v. Ahrens, 172 Wn. App. 281, 292–93 (2012) (quoting Burns v. McClinton, 135 Wn. App. 285, 303–06 (2006), review denied, 161 Wn.2d 1005 (2007)). And "the definition of 'unfair' and 'deceptive' must be objective to prevent every consumer complaint from becoming a triable violation of the act." Id.

A practice may be unfair if it "'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits.'" Klem v. Washington Mut. Bank, 176 Wn.2d 771, 787 (2013) (quoting

15 U.S.C. § 45(n)). "[B]ecause the act does not define 'unfair' or 'deceptive,' this court has allowed the definitions to evolve through a 'gradual process of judicial inclusion and exclusion.'" Saunders v. Lloyd's of London, 113 Wn.2d 330, 344 (1989) (quoting State v. Reader's Digest Ass'n, 81 Wn.2d 259, 275 (1972), modified in Hangman Ridge, 105 Wn.2d at 786)).

The Parties dispute whether the "capacity to deceive" presents a factual or legal question. The Ninth Circuit's Memorandum cited Washington law stating that "whether [an act] had the capacity to deceive a substantial portion of the public' is a 'question of law.'" Ninth Cir. Mem. at 4 (quoting State v. LA Inv'rs, LLC, 2 Wn. App. 2d 524, 539 (2018)). But this does not quite track the Washington Pattern Jury Instructions, which point out that this is only a question of law if the facts about the act at issue are undisputed:

> When the underlying facts are undisputed, the question whether the acts are likely to deceive—an objective inquiry—is a question of law. State v. Mandatory Poster Agency, Inc., 199 Wn. App. 506, 512, 398 P.3d 1271 (2017). However, whether such a deception has the capacity to reach a substantial portion of the public is a question of fact precluding summary judgment, unless the undisputed facts establish that capacity. Mandatory Poster Agency, 199 Wn. App. at 512.

WPIC 310.01 (Comment). Other Washington courts have concluded that "[w]hether a deceptive act has the capacity to deceive a substantial portion of the public is a question of fact." Behnke, 172 Wn. App. at 292. Having considered the case law, the Court concludes that whether conduct has the "capacity to deceive" is a question of law but only if the underlying facts relevant to that question are undisputed.

          **b.**     **Unfair and Deceptive Acts Not Actionable**

The Court finds that the purported deceptive conduct does not have the capacity to deceive a substantial portion of the public.

1    Construing the facts in the light most favorable to International, the Court finds that
2    International has identified deceptive conduct. Specifically, International points to evidence that
3    Seattle misleadingly stated that it would implement the repairs specified in the repair bulletin,
4    but did not. (Declaration of Tyler Hermesen Ex. 2 at 1051 (Dkt. No. 110 at 14).) While thin, the
5    Court finds that this is sufficient evidence of deceptive and unfair conduct.
6    But the Court remains unsatisfied that Seattle's failure to implement the repair had
7    capacity to deceive a substantial portion of the public. See Behnke, 172 Wn. App. at 292 (noting
8    that while there is no numeric threshold, the acts or omissions must have the capacity to deceive
9    a substantial portion of the public). The purchase and operation of Duck 6 was part of a private
10   and ongoing licensee/licensor relationship. International did not offer the stretch duck vehicles to
11   the public at large. Rather, they were only available for sale to its licensees. The repair bulletin
12   concerned only those licensees and any representations Seattle made to International about
13   following the service bulletin was limited to the two parties. The purported failure to make good
14   on the promise to implement the repair was part of the ongoing and existing licensee/licensor
15   relationship that is private in nature and limited in scope to the Parties, not other consumers in
16   Washington. The facts here align with those in Behnke, where the issue presented was whether
17   an accountant's failure to disclose a conflict of interest regarding advice on a tax opinion
18   constituted an unfair or deceptive act. See Behnke, 172 Wn. App. at 295-96. The court there
19   noted that the act was part of a private arrangement and, even though the accountant represented
20   other clients with respect to the "controversial tax strategy," there was no evidence that the
21   deceptive act was "repeated with these other clients or was likely to be repeated with other future
22   clients." Id. at 296. Here, the maintenance of Duck 6 was, at best, part of a private
23
24

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

licensee/licensor arrangement. As in Behnke, the Court finds that there is inadequate evidence that the unfair and deceptive acts were repeated or likely to be repeated in any meaningful way.

The Court is also unconvinced by International's argument that Seattle's public-facing statements about the safety of its duck boats shows actionable unfair and deceptive conduct. International fails to identify any specific statements Seattle made to it about the safety of its duck boats. (Resp. at 3 (citing Hermsen Decl. Ex. 2 (West Trial Tr 1587:16-1589:6; 1602:3-6; 1724:1-25)).) There is therefore a failure of proof as to any actionable statement made to International about the safety of Seattle's duck boats.

While Seattle has identified an unfair and deceptive act or omission, it has failed to provide sufficient evidence that it has the capacity to deceive a substantial portion of the public. The act or omission is therefore not actionable under the CPA. On this basis the Court GRANTS the Motion and enters summary judgment in Seattle's favor on the counterclaim.

### 2. Public Interest

Though the Court need not reach this issue, the Court agrees with Seattle that there is insufficient evidence that the deceptive and unfair acts affect the public interest.

The CPA requires a showing that the act at issue impacts the public interest. Hangman Ridge, 105 Wn.2d at 789-90. "[W]hether the public has an interest in any given action is to be determined by the trier of fact from several factors, depending upon the context in which the alleged acts were committed." Id. Washington courts recognize two different contexts: (1) consumer transactions, and (2) private disputes. Id. "The factors in both the 'consumer' and 'private dispute' contexts represent indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact." Id. at 791.

1      "Where the transaction was essentially a consumer transaction, these factors are relevant

2 to establish public interest: (1) Were the alleged acts committed in the course of defendant's

3 business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated

4 acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for

5 repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of

6 involved a single transaction, were many consumers affected or likely to be affected by it?"

7 Hangman Ridge, 105 Wn.2d at 790 (internal citation omitted).

8      But where the transaction is "essentially a private dispute" the "[f]actors indicating public

9 interest in this context include: (1) Were the alleged acts committed in the course of defendant's

10 business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit

11 this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant

12 occupy unequal bargaining positions?" Hangman Ridge, 105 Wn.2d at 790-91. These elements

13 reflect the fact that "[o]rdinarily, a breach of a private contract affecting no one but the parties to

14 the contract is not an act or practice affecting the public interest." Id. at 790.

15      Here, the Court finds that the representations about complying with the service bulletin

16 are private in nature given the unique context in which the statements were made between a

17 licensee and licensor. Employing the "private dispute" analysis, the Court finds insufficient

18 evidence to support a finding of public interest in International's favor. First, while the

19 representation was made in the course of Seattle's business, it was limited to the

20 licensee/licensor relationship between the parties. This favors Seattle. Second, while there is

21 evidence that Seattle advertised the safety of its operations to the public, the specific

22 representations about compliance with International's service bulletins was limited to

23 International. And there is inadequate evidence that Seattle made any similar representation

24

1 about the safety of its duck boats to International. This factor favors Seattle. Third, the

2 representations about compliance with the service bulletin were limited to International and were

3 not part of solicitations or representations to others. This factor favors Seattle. Fourth, there is

4 mixed evidence about the bargaining power of the parties. Seattle maintains that it was

5 unsophisticated, but there is evidence that Seattle had its own maintenance crew and was

6 inspecting its vehicles, including Duck 6. This factor is neutral. On balance, the Court finds that

7 International has not met its burden to show that a jury could find the "public interest" element

8 satisfied. This is an independent basis on which the Court GRANTS the Motion.

**B.      Inadequate Evidence of Violation of Public Policy**

Although the Court need not reach this issue because International cannot satisfy the first element of its claim, the Court finds that International has also not satisfied the "public interest" element of its CPA by showing a violation of public policy.

A CPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." Klem, 176 Wn.2d 787.

International has failed to identify a per se CPA violation or a violation of public policy that is otherwise unregulated by statute. International concedes that Seattle was a common carrier subject to a variety of regulations, including, for example RCW 81.68.030. (Resp. at 6; see also Reply at 4 (identifying RCW 49.12.020 as another regulation governing the conduct).) As such, the conduct at issue was regulated by statute and International cannot invoke the "public interest" exception set out in Klem to satisfy this element. Moreover, the mere fact that vehicle safety serves an important public interest does not mean that Seattle's specific representation to

International impacts the public. This is an additional basis on which the Court GRANTS the Motion and enters summary judgment in Seattle's favor.

C.  **Injury and Causation**

The Court finds International has failed to show a dispute of fact as to causation, even if the Court accepts that there is a dispute of fact as to injury.

The CPA requires there to be a causal link between the unfair or deceptive act and the injury suffered. See Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 13 Wn. App. 210, 227 (2006). The Court agrees with International that there is evidence of an injury, construing the evidence in the light most favorable to International. (See Resp. at 11-12.) But International's theory of causation falls apart because it had a duty to ensure Seattle implemented the underlying repairs. (See Declaration of Patricia K. Buchanan Ex. 21 at 964, 974, 1069 (Dkt. No. 101-1 at 141-42, 145) (containing International's admission it had a duty to ensure the repairs were completed).) Because International had a duty to inquire and ensure compliance, it could have avoided all of the claimed injuries. This undermines the theory of causation. The outcome here is consistent with Douglas v. Visser, 183 Wn. App. 823 (2013). In that case, the plaintiffs purchased a home that they claimed suffered from rot that was not disclosed in violation of the CPA. Id. at 825-29. But the plaintiffs were on notice of the defects from their own inspection. The court concluded that the plaintiffs could not prove causation as to their CPA claim because they could have avoided all injury had they undertaken further inspection. See id. at 834. Here, similarly, International had a duty to ensure Seattle implemented the repairs and it could have avoided all injury had it made further inquiry and ensured the repairs were implemented. This is an alternative basis on which the Court GRANTS summary judgment in Seattle's favor on the counterclaim.

## CONCLUSION

The Court finds that International has not identified conduct that has sufficient capacity to deceive a substantial portion of the public to be actionable under the CPA. The Court also finds an absence of evidence to support a finding that the conduct impacts the public interest. And the Court finds a lack of evidence of causation. The Court therefore GRANTS the Motion and enters summary judgment in Seattle's favor on International's counterclaim.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 30, 2023.

Marsha J. Pechman
United States Senior District Judge